Larry Kilstrip  
1880 South Filbert Court  
Denver, Colorado 80222-4511

March 2, 2003

Dear Larry,

Just so there is no misunderstanding, this letter is not from the Commodore or the Board of Directors. It is just from me personally, from one club member and friend to another.

It was a near thing when the AVIVA almost sank just over a month ago. Had it not been for the sharp eyes of Will Whitehouse and the quick action of several members there is no doubt that the vessel would have sank. As it was, the water level only reached the top of the engine stringers and I doubt there has been any serious damage, but that is only because we were able to get into the engineroom and close the seacocks of the raw water systems that had broken strainers before enough ice melted to allow the full flow of water into the hull. However, we were probably within 10 or 15 minutes of the vessel sinking because as we closed one seacock another strainer thawed enough to start leaking. The water coming in from all of these seacocks would have sunk the vessel quickly. The fact that we found every seacock on the vessel open was a a real disappointment for me because it meant you were relying on the heat provided by the 110-volt heaters alone to keep the strainers from freezing and possibly allowing the vessel to sink. I know you are a better boater than that.

Since that time, Will, Kelvin and I have been monitoring the boat several times a day. There is one 110-volt electric bilge pump and one heater on the vessel, both operating with extension cords. We have shoveled the boat off several times and don't mind doing so. Naturally, we club members always try to take care of the boats whose owners are absent. However, there comes a point where the club should not have to take responsibility for a member's vessel and I think we are quickly approaching that point.

I was told that you were going to come to CYC to check on the boat on the Wednesday following the incident but that day has long come and gone and we have yet to hear from you. I'm afraid that people are taking a very dim view of the lack of action on your part and I am seeing a trend where the discussions start with concern that nothing is being done to be sure AVIVA is both safe and secure, but the conversations seem to quickly shift to what the yacht club should be doing about boats that have been abandoned and how maybe it is time that the club sets some standards that must be maintained. I seriously believe that if nothing is done to correct the situation on AVIVA that either the members or the Board of Directors may reach a point where they feel it is necessary to get involved. And to be perfectly honest, I can't say I don't agree with them.

It is bad enough that the vessel looks very poor cosmetically. The fact that AVIVA is next to the slip where most of the mega-yachts moor is worse. Kelvin tells me that In the last year we have had many disparaging comments from the captains of these vessels and requests that they be allowed to tie up on another dock. Between the peeling paint and ripped canvas AVIVA has clearly earned the dubious distinction of being the worst looking boat at CYC, a fact I know you would not be proud of.

One of the things that concern me most is the fact that I seem to be the only one on the Board of Directors who even knows who you are. The Board is a relatively new group. They are very well meaning but right now they see you as someone who has abandoned a boat here and there is a real concern that the boat may sink, possibly making CYC partly responsible because we knew there were problems and didn't do something about it. Not knowing you personally, I think the other members of the Board see you a little differently than I do and I am afraid they are nearing the point where they will demand action on your part if they do not believe that problems are being taken care off.

If you can not make it to DC yourself, I hope you will at least arrange to replace the shore ends of both your shore power cords so the vessel's electrical systems can be tested and reactivated. Considering the level the water reached, I doubt you will find any serious damage. However, right now the batteries are not being charged and none of the installed bilge pumps are operational except the 110-volt pump below the galley sole. If this were my boat, I would not feel safe depending one only one pump.

I hope you will not take offense at anything I have written. All I want to do is try to help you see how people here are looking at the situation and hopefully avoid any conflict between you and the club.

                                              Sincerely,

                                              Guy R. Nolan



# The Capital Yacht Club

1000 Water Street, S.W. • Washington, D.C. 20024 • 488-8110

March 11, 2003

Larry Kilstrup
1880 S. Filbert Court
Denver, CO  80222

Dear Mr. Kilstrup,

Please be advised that the following serves as formal notification that as of this writing, the Capital Yacht Club records indicated that you are delinquent in payment to the effect of sixty (60) days and that you have been late in payment three times in this current twelve month period.

The Club By-Law of Article XI, Section 8, states that "If payment is not made within sixty (60) days from the date of invoice the member MAY be dropped from the Club roll". And continues by stating "If payment is not made within ninety (90) days from date of invoice the Member SHALL be dropped from the Club roll."

The Club By-Law of Article XI, Section 8, also states that "any member whose account has been delinquent four times during a twelve month period shall be dropped from the Club roll unless a vote of two thirds of the Board of Directors grants an exception."

As the Board highly values your membership in this club, we take this opportunity, as a courtesy, to advise that as of this writing, our records indicate that you already have been late in payment three times in this current twelve month period as follows: December 2002, January 2003 and February 2003.

The Board is confident that there may be extenuating circumstances that have contributed to your current status, which may influence the Board's deliberations in this matter, and it is recognized that you may wish to contend our records.

**Founded 1892**

In either case, the Board of Directors solicits your provision of all pertinent information either in person or by letter.

Your prompt attention to this matter is greatly appreciated.

Sincerely,

*[signature]*

Laurence Jones
Secretary

**The Capital Yacht Club**

1000 Water Street, S.W. • Washington, D.C. 20024

Founded 1892

CERTIFIED MAIL

Z 284 200 631

Return Receipt Requested

Fold at line over top of envelope to the right of the return address

Larry Kilstrup
1880 S. Filbert Court
Denver, CO 80222

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Larry Kilstrup
1880 S. Filbert Court
Denver, CO 80222

4a. Article Number
Z 284 200 631

4b. Service Type
☐ Registered   ☐ Insured
☒ Certified    ☐ COD
☐ Express Mail ☐ Return Receipt for Merchandise

7. Date of Delivery

5. Signature (Addressee)
Pam Kilstrup

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1991    *U.S. GPO: 1993—352-714    DOMESTIC RETURN RECEIPT



The
Capital
Yacht
Club

1000 Water Street, S.W. • Washington, D.C. 20024 • 488-8110

Larry A. Kilstrup A-1111
1800 South Filbert Court
Denver, CO 80222-4511

Dear Mr. Kilstrup,

    Although our letter of 11 March, 2003 advised you that you had been delinquent In payments three times in the past twelve months, our records now indicate that you have been delinquent on four occasions.

    The board of directors again advises you of Article XI, Section 8 of the clubs bylaws, which states that "any member whose account has been delinquent four times during a twelve month period shall be dropped from the Club roll unless a vote of two thirds of the Board of directors grants an exception."

    The board will be discussing this matter at the 23 June, 2003 Board meeting and offer you the opportunity to present any extenuating circumstances which may assist the board in their deliberations, either in person at that meeting, or in writing prior to the meeting.

    The board remains confident that we can rely on your understanding and cooperation in this matter. In anticipation of seeing you on 23 June, 2003

Yours sincerely,

Laurence K. Jones
Secretary



# The Capital Yacht Club

1000 Water Street, S.W. • Washington, D.C. 20024 • 488-8110

June 27, 2003

Larry Kilstrip
1880 South Filbert Court
Denver, Colorado 80222-4511

Dear Mr. Kilstrip,

Article XI, Section 8 of the CYC By-laws states that "A Member whose account has been delinquent four (4) times during a twelve (12) month period shall be dropped from the Club roll unless a vote of two-thirds (2/3) of the Board of Directors grants an exception." Our records indicate that your account has been delinquent four times in the last twelve months and that the May and June bills are still outstanding. A letter was sent to you on June 13, 2003 to notify you of this situation, alert you that the issue would be addressed at the June 23, 2003 meeting of the Board of Directors and invite your attendance. However, we have since noted that the letter was sent to the wrong address and there is a chance that you did not receive it. No action has been taken to date, so technically you are not a Member of the Capital Yacht Club, although you may still request that the Board of Directors grant an exception and reinstate your membership.

Since it is possible that you did not receive our earlier letter we have delayed billing you at the transient rate and will not do so until at least the next Board meeting to provide you with an opportunity to respond or attend that meeting on July 7, 2003.

Sincerely,

Laurence Jones
Secretary

Founded 1

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

DENVER CO 80222

| | | |
|---|---|---|
| Postage | $0.37 | 0271 |
| Certified Fee | $2.30 | 02 |
| Return Receipt Fee (Endorsement Required) | $1.75 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $4.42 | 06/27/2003 |

Sent To Mr. Larry Kilstrip
Street, Apt. No.; or PO Box No. 650 S. Filbert Ct.
City, State, ZIP+4 Denver CO 80225

PS Form 3800, January 2001        See Reverse for Instructions



# LAW OFFICE OF LISA P. ELLIS

3009 GREENHAVEN COURT, SUITE 100
ELLICOTT CITY, MARYLAND 21042

ADMITTED IN:

Maryland State and Federal Courts
District of Columbia Federal Courts

Phone: 410-461-7373
Fax: 410-461-3232
lisaellis@comcast.net

U.S. Court of Appeals for Fourth Circuit
U.S. Court of Appeals for D.C. Circuit

January 21, 2004

James J. Levin, Esq.
2950 Edgewater Drive
Edgewater, Maryland 21037-1305

Larry Kilstrip
1880 South Filbert Court
Denver, Colorado 80222-4511

Re:   Vessel M/V AVIVA

Dear Mr. Levin and Mr. Kilstrip:

As you both are aware, this office represents Capital Yacht Club concerning the vessel M/V AVIVA. According to the records of Capital Yacht Club, M/V AVIVA is owned by Larry Kilstrip, who, because of successive delinquent payments, is no longer a member of Capital Yacht Club. Sections 8 and 9 of the Member by-laws clearly state that:

**Section 8. Delinquent Account Loss of Membership**
If payment is not made within sixty (60) days from the date of invoice the Member may be dropped from the Club roll. If payment is not made within ninety (90) days from the date of the invoice, the Member shall be dropped from the Club roll. A Member whose account has been delinquent four (4) times during a twelve (12) month period shall be dropped from the Club roll unless a vote of two-thirds (2/3) of the Board of Directors grants an exception. A Member whose account has been delinquent for six (6) consecutive months shall be dropped from the Club roll.

**Section 9. Remedies for Delinquent Accounts**
If a Member is dropped from the Club roll, any boat remaining at the Club in the name of that Member shall be billed at the transient rate. If the Board deems necessary, the boat of a debtor shall be attached to satisfy the debt to the Club. Any legal and/or collection fees associated with the collection of outstanding debts shall be borne by the debtor.

On June 27, 2003, Capital Yacht Club sent Mr. Kilstrip a certified letter informing him of his delinquency status and the Board's position that since Mr. Kilstrip was delinquent four (4) times in a twelve (12) month period, he shall be dropped from the Club as a Member and if his boat remained at the Club, and he would be billed at the transient rate unless he responded or attended the July 7, 2003 Board meeting. Mr. Kilstrip failed to respond or attend the Board

Meeting, thus he was drop[ped] as a Member on July 7, 2003. His Do[cki]ng Agreement was also terminated on that date. Technically, he was dropped as a Member on June 1, 2003, but as the letter gave him until the Board Meeting to contest, I am using the date of the Board Meeting as the termination date.

As of July 7, 2003, the vessel AVIVA has remained at the Capital Yacht Club at the non-member transient rate of $1.25 per foot per day x 55 feet which equals $68.75 per day or $13,543.75 as of January 20, 2004.

It is also my understanding that on or about January 30, 2003, the AVIVA nearly sank because it had not been winterized, and it took considerable effort from the Fireboat and Capital Yacht Club to save the vessel from sinking. It is now January 21, 2004 and I understand the vessel has again not been winterized, although the waters have already started freezing over. Capital Yacht Club has informally and formally requested that Mr. Kilstrip remove his vessel from Capital Yacht Club before the winter in order to avoid another near disaster like last winter. Mr. Kilstrip has refused to do so.

Accordingly, Capital Yacht Club has asked me to foreclose its maritime lien on the vessel AVIVA to collect the outstanding fees of $13,543.75, plus additionally per diem fees, court costs, U.S. Marshal and custodia legis fees and legal fees. If the vessel is arrested and Capital s maritime lien for necessaries foreclosed upon, Mr. Kilstrip will be forced to pay upwards of $25,000, and will still be forced to remove his vessel from Capital Yacht Club, or the vessel will be sold at judicial foreclosure sale free and clear of all liens.

I fully intend to comply with the demands of Capital Yacht Club and foreclose its maritime lien for necessaries, however, Capital Yacht Club has proposed one last settlement offer to induce Mr. Kilstrip to remove his vessel voluntarily from the Club, without litigation. That offer is as follows:

1. Mr. Kilstrip will agree to pay all back transient slip fees and future transient slip fees to March 31, 2004 (or sooner if vessel removed sooner) at a rate that is 50% of the transient rate of $1.25 per foot.

2. Mr. Kilstrip shall remove the vessel from CYC docks absolutely no later than March 31, 2004.

3. Both Mr. Kilstrip and Capital Yacht Club would agree not to litigate and the parties would execute mutual releases releasing each other from any and all claims and defenses which have been asserted or could be asserted concerning the vessel AVIVA, Capital Yacht Club Membership, dues, fees, etc.

4. Mr. Kilstrip shall provide written permission in the form attached on or before January 30, 2004, for CYC to move the vessel to a slip of its choice and written permission to board the boat as necessary to ensure its safety in exchange for a credit to his account with the $2250 in checks that have been received since July.

The terms of this offer must be accepted by Mr. Kilstrip in writing by signing the below Agreement of Settlement and faxed to my office no later than 5:00 pm January 30, 2004. We

Law Office of Lisa P. Ellis
January 21, 2004
Page 3

will accept the signature of his attorney as binding. If the terms of this settlement are not fully complied with, Capital Yacht Club shall move the vessel without the consent of Mr. Kilstrip and arrest the AVIVA to foreclose its maritime lien for necessaries on or about February 1, 2004.

                                          Very truly yours,

                                          *Lisa P. Ellis*

                                          Lisa P. Ellis, Esq.

      I, Larry Kilstrip and my duly authorized attorney have read the above letter from Capital Yacht Club and do hereby agree to its offer of settlement as outlined in numbered paragraphs 1-4.

      Specifically, in addition to agreeing to comply with paragraphs 1 through 3 of the proposed settlement, I, Larry Kilstrip do hereby give Capital Yacht Club written permission for Capital Yacht Club to move my vessel AVIVA to a slip of its choice and give Capital Yacht Club further permission to board the vessel as necessary to ensure its safety.

      In exchange for this permission, I authorize Capital Yacht Club to cash all checks which I have tendered since July, 2003 to reflect a credit to my account of $2,250. I hereby agree that if any check is returned for insufficient funds or any other reason, my account will not be credited the amount of the returned check.

_____              _____
LARRY KILSTRIP                                    DATE

or

_____              _____
James Levin, Esq.                                        DATE
duly authorized attorney or agent for Larry Kilstrip